UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MERRI J. ROBBINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:19-cv-00021-JD |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **OPINION AND ORDER**

Plaintiff Merri Robbins filed a complaint seeking review of the final decision of the Commissioner of Social Security denying her application for social security disability benefits. [DE 1]. The matter is fully briefed and ripe for decision. [DE 21, 26, 27]. For the reasons stated below, the Court remands this matter to the Commissioner for further proceedings.

## I. FACTUAL BACKGROUND

In 2015, Ms. Robbins applied for disability insurance benefits and supplemental security income, claiming her disability began November 1, 2000. Her claim was denied initially and upon reconsideration. On November 16, 2017, Ms. Robbins participated in a hearing before an ALJ. The ALJ issued an unfavorable decision denying her disability benefits and concluded that Ms. Robbins was not disabled under the Social Security Act because she had the residual functional capacity that allowed her to perform work in the economy. The Appeals Council denied Ms. Robbins' request for review, after which Ms. Robbins filed this appeal. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Ms. Robbins seeks review of the Commissioner's decision, thereby invoking this Court's jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

1

At the hearing in front of the ALJ, Ms. Robbins, her mother, and a vocational expert ("VE") testified. Ms. Robbins testified that the only job she has had in the past 15 years is as a school crossing guard. (R. 59). This job required her to work a couple hours a day, five days a week, and eight or nine months during the year. *Id.* She also testified that during this part-time job, she was able to sit down in a folding chair when she waited for the children to be ready to cross the street. (R. 65). The ALJ found that this work did not rise to the level of substantial gainful activity and therefore, Ms. Robbins had no past relevant work. (R. 24, 30, 217). Ms. Robbins and her mother testified to instances where during her time as a crossing guard, Ms. Robbins had inappropriate encounters with or was taken advantage of by others. (R. 70-72, 83-85). Her mother testified that Ms. Robbins has trouble controlling her anger. (R. 80-83, 89-90). She also testified that Ms. Robbins relies on her mother for certain tasks such as money management and filling out forms. (R. 73, 85-86). Lastly, both Ms. Robbins and her mother testified to her impulsive, sometimes reckless, driving. (R. 62-63, 88-89).

Ms. Robbins has struggled her entire adult life with anxiety disorder, depression, cognitive problems, and knee pain. (R. 938). Ms. Robbins was diagnosed with borderline intellectual functioning. (R. 371-72). The ALJ found Ms. Robbins has the following severe impairments that significantly limit her ability to perform basic work activities as required by SSR 85-28: "mild degenerative joint disease of the bilateral feet; bilateral knee degenerative changes; plantar fasciitis; obesity; anxiety disorder by history and mood disorder NOS." (R. 24). The ALJ found that Ms. Robbins does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404. *Id.* Among other limitations, the ALJ found Ms. Robbins to have a moderate limitation in concentrating, persisting, or maintaining pace. *Id.*

In response to the hypothetical questions posed by the ALJ, the VE testified that a person of Ms. Robbins' age and background but limited to light work involving only four total hours of standing/walking, simple, repetitive and routine tasks with no more than minimal math skills that is free of production rate pace and free of quotas with end of day goals and low stress, along with other limitations, could perform the requirements of unskilled sedentary occupations such as small parts sorter, laminator, and surveillance monitor, which exists in the national economy. (R. 94-95). The VE testified that in order to be employable, a person could only be off task 10% of the workday and can only be absent one day per month. (R. 95). The VE also testified that a person who responds to an employer with anger and yelling is likely to be terminated after one warning. (R. 99).

## II. STANDARD OF REVIEW

Because the Appeals Council denied review of the ALJ's decision, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas*, 732 F.3d at 707. This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision so long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the ALJ's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this

substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

## III. STANDARD FOR DISABILITY

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must then assess the claimant's residual functional capacity ("RFC"), which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## IV. DISCUSSION

Ms. Robbins offers the following arguments for remand: 1) the ALJ failed to sufficiently discuss and support his finding that Ms. Robbins did not fulfill the paragraph B criteria of Listing 12.04 and 12.05; 2) the ALJ failed to support his RFC determination with substantial evidence; 3) the ALJ failed to adequately evaluate Ms. Robbins' subjective symptom testimony; and 4) the ALJ failed to resolve the conflict between the VE testimony and the Dictionary of Occupational Titles ("DOT"). The Court only addresses the second argument, as the Court agrees that the ALJ failed to support Ms. Robbins' assigned RFC with substantial evidence therefore requiring

5

remand. The Court need not address the remaining arguments, which will either be moot or can be addressed on remand.

The ALJ must determine an individual's RFC, meaning "what an individual can still do despite his or her limitations," SSR 96–8p, based upon medical evidence as well as other evidence, such as testimony by the claimant. *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even as to limitations that are not severe. *Id.*; *see* 20 C.F.R. § 404.1529(a) (in making a disability determination, the ALJ must consider all of a claimant's symptoms and how those symptoms affect a claimant's daily life and ability to work). The ALJ must then build "an accurate and logical bridge from the evidence to the conclusion" so that a court can assess the validity of the agency's decision and afford the claimant meaningful review. *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007). The ALJ's RFC assessment and the hypothetical questions posed to the VE must both incorporate all of the limitations that are supported by the record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is a well-established rule. *See Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (collecting cases). In particular, if the ALJ finds that a plaintiff has a moderate limitation in maintaining concentration, persistence or pace, that limitation must be accounted for in the hypothetical question posed to the VE and the RFC assessment; in most cases, limiting the plaintiff to simple, repetitive tasks or to unskilled work is not sufficient to account for moderate concentration difficulties. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010); *see also Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). However, the ALJ's opinion in this case does not reflect his consideration of the relevant evidence and it fails to provide a logical bridge from the actual evidence to the ALJ's RFC assessment.

Here, at Step 3, the ALJ found that Ms. Robbins has a moderate limitation in concentrating, persisting, or maintaining pace. (R. 24). The ALJ then found the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant could stand/walk for four hours in a workday; she is limited to simple, repetitive and routine tasks with no more than minimal math skills; free of production rate pace and free of quotas but should rely more on end of day goals being satisfied; low stress job defined as not requiring the worker to cope with work related circumstances that could become dangerous to the worker or others; no more than occasional workplace changes and frequent contact with public, coworkers and supervisors.

(R. 25). The law requires the ALJ to incorporate into the hypotheticals those impairments and limitations that the ALJ accepts as credible. *See Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007). The Seventh Circuit has stated that although "particular words need not be incanted, [the court] cannot look at the *absence* of the phrase 'moderate difficulties with concentration, persistence, and pace' and feel confident this limitation was properly incorporated in the RFC and in the hypothetical question." *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019) (citing *O'Connor-Spinner*, 627 F.3d at 619). The RFC and hypothetical questions here did not include the phrase "moderate difficulties with concentration, persistence, and pace." Neither the RFC nor the hypothetical questions posed to the VE sufficiently accounted for the ALJ's finding of a moderate limitation in concentration, persistence, and maintaining pace and the substantial evidence that Ms. Robbins has poor to no ability to maintain concentration or attention.

In *DeCamp*, the court found that the ALJ erred by not including the claimant's moderate limitations in concentration, persistence and maintaining pace in the hypothetical question to the VE. *DeCamp v. Berryhill*, 916 F.3d 671, 675 (7th Cir. 2019). Instead of mentioning the claimant's moderate limitations in concentration, persistence, and pace, the ALJ in *DeCamp* limited the claimant to "unskilled work" with no "fast-paced production line or tandem tasks."

*Id.* The court has previously rejected similar formulations of a claimant's limitations because "there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace." *Id.* at 675–76 (citing *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018); *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016)). This is the case here. The ALJ included the limitation of "free of production rate pace and free of quotas" in the RFC and hypothetical to the VE, however, as in *DeCamp*, this does not account for a finding of a moderate limitation of concentration, persistence and pace. Further, the RFC and hypothetical limited Ms. Robbins to "simple, repetitive and routine tasks." The Seventh Circuit has "repeatedly rejected the notion that a hypothetical . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Yurt*, 758 F.3d at 858–59.

When an ALJ's hypothetical questions posed to a VE fails to incorporate all limitations, the Seventh Circuit has sometimes "assumed a VE's familiarity with the claimant's limitations, despite gaps in the hypothetical, when the record shows that the VE independently reviewed the medical record or heard testimony directly addressing those limitations." *O'Connor-Spinner*, 627 F.3d at 619*; see also DeCamp*, 916 F.3d at 676. However, that is not the case here. Prior to the hearing, the VE had not discussed the merits of this case with the ALJ, Ms. Robbins or her attorney. (R. 92). Additionally, the VE testified that she reviewed Ms. Robbins' vocational background, not her medical background. (R. 93). Therefore, this Court does not assume the VE's familiarity with Ms. Robbins' limitations as it was the ALJ's duty to adequately include all of Ms. Robbins' limitations in the hypothetical or explain why it did not include relevant portions of the VE's testimony in his decision. *Yurt*, 758 F.3d at 857.

Here, the Commissioner contends that while the ALJ found a moderate limitation on concentrating, persisting, or maintaining pace, the ALJ noted Ms. Robbins had difficulty with math, but her "concentration/attention seemed to be intact during her therapy sessions as well as psychiatric evaluations." (R. 24).[1] The Commissioner further argues that the limitation "end-of-day work goals instead of production rate pace or quota requirements" accounts for Ms. Robbins' "problems with counting/math and with managing herself (e.g., cleaning up after herself and needing reminders, yet having adequate concentration/attention)." [DE 26, at 9]. Put differently, the Commissioner is not arguing that the RFC's limitation is adequate to account for the moderate limitation in concentration, persistence or maintaining pace, but rather, such a limitation is not even needed since the ALJ found her concentration/attention was adequate or "intact." This argument falls short. First, the ALJ's statement concerning Ms. Robbins' intact attention and concentration during therapy sessions and psychiatric evaluations does not provide an accurate and logical bridge to the ALJ's conclusion that Ms. Robbins' attention and concentration is intact generally in light of the substantial evidence to the contrary in the record. Second, the ALJ failed to establish a logical bridge between how a moderate limitation in concentration, persistence or maintaining pace correlates to Ms. Robbins' difficulty with math. Her math limitations are accounted for by "no more than minimal math skills." (R. 24). Contrary to the Commissioner's argument, because the ALJ found a moderate limitation in concentration, persistence or maintaining pace, the ALJ is required to properly incorporate that limitation into the RFC with sufficient explanation. The ALJ failed to do so here. Although an ALJ's failure to

---

[1] In his decision, the ALJ attempted to limit the moderate limitation findings to the Step 3 analysis by indicating that the limitations "are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (R. 25). However, the Seventh Circuit has held on numerous occasions that the hypothetical question presented to the VE and the resulting RFC must account for documented limitations, including those in concentration, persistence and pace. *See Winsted*, 923 F.3d at 476; *Crump*, 932 F.3d at 570; *DeCamp*, 916 F.3d at 675–66; *Moreno*, 882 F.3d at 730; *Yurt*, 758 F.3d at 857.

properly account for a moderate limitation in concentration, persistence or pace can be harmless, the error here is not and the ALJ further erred by not building a logical bridge between the evidence and his conclusion, requiring remand.

While the Court realizes that an ALJ need not discuss every piece of evidence in the record in rendering his decision, the ALJ cannot "cherry-pick" facts that support a finding of non-disability while ignoring evidence that points to a disability finding. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). But that is precisely what the ALJ did here. The ALJ gave little weight to two "Medical Assessment of Ability to do Work Related Activities (Mental)" opinions. (R. 29, Ex. 12F, Ex. 20F). These forms were filled out by Ms. Robbins' social worker and psychiatrist in 2016 and by the same social worker and a different psychiatrist in 2017. (R. 29). Both forms indicated that Ms. Robbins has "poor/no ability to maintain concentration/attention." (R. 1231, 1458). While the ALJ notes that Ms. Robbins' attention and concentration are intact during therapy and psychological evaluations, the ALJ dismisses the treating therapist's and psychiatrists' conclusions in these assessments that Ms. Robbins has poor to no ability to maintain concentration or attention. The psychiatrists who made these assessments, Dr. Kodi Douglas, MD and Dr. Ishani Dalal, DO, were both Ms. Robbins' treating physicians. (*See, e.g.*, R. 948, 964, 971, 978, 980, 992, 1000, 1332). Treating physicians' opinions on the nature and severity of a claimant's medical condition are "entitled to controlling weight if [they] are well supported by medical findings and consistent with other record evidence." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018).[2] If well-supported contradicting evidence is introduced, however, the treating physician's opinion is no longer entitled to controlling weight and becomes just one more piece of evidence for the ALJ to weigh.

---

[2] This treating-physician rule applies only to claims filed before March 27, 2017. *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018). Ms. Robbins filed her disability claim in 2015.

*Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). Applicable here, however, if an ALJ decides not to give controlling weight to a treating physician's opinion, he must explain his reasons for doing so. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011).[3] The ALJ stated little weight was given to these assessments because "the opinions did not lay out specific mental functional limits" but did not provide any reasoning as to why these opinions should not receive controlling weight. (R. 29). The ALJ failed to give controlling weight to the treating physicians and alternatively, failed to explain why the physicians should not be given controlling weight. Further, the ALJ cherry-picked the evidence from these treating physicians in favor of non-disability and disregarded, without sufficient explanation, evidence in favor of disability.

Additional substantial evidence in the record supports that the RFC does not adequately account for Ms. Robbins' limitation in concentration, persistence, or maintaining pace, and the ALJ did not adequately explain why he disregarded that evidence. The State agency psychological consultant found Ms. Robbins to be moderately limited in the "ability to carry out detailed instructions"; "ability to maintain attention and concentration for extended periods"; and "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform a consistent pace without unreasonable number and length of rest periods." (R. 112-13, 127). The ALJ noted that the State agency psychological consultant found that Ms. Robbins had certain capabilities but omitted this evidence of moderate limitations in her concentration, attention or pace. (R. 29). Another State agency consultant

---

[3] Assessing what weight to afford a medical opinion depends on a number of factors, such as the examining relationship; the treatment relationship; the degree to which the source presents relevant evidence to support the opinion; the consistency of the source's opinion with the other evidence; whether the source specializes in an area related to the individual's impairment; and any other factors tending to support or refute the opinion. 20 C.F.R. § 404.1527(c). If the ALJ discounts the treating physician's opinion after considering these factors, his decision must stand as long as he "minimally articulated his reasons—a very deferential standard that we have, in fact, deemed lax." *Elder*, 529 F.3d at 415 (citing *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)). Here, the ALJ did not consider these factors.

found Ms. Robbins had "[s]ustained concentration and persistence limitations." (R. 126). This evidence provides further detail to Ms. Robbins' limitations in concentration, persistence, and pace that are not accounted for in the RFC. "[F]ree of production rate pace and free of quotas but should rely more on end of day goals being satisfied" does not address all facets of her limitations that directly impact her ability to work, such as the moderate limitation in her ability to complete a normal workday or week without an unreasonable number of rest periods. The ALJ failed to create a logical bridge from this opinion evidence to the RFC's qualifier "but should rely more on end of day goals being satisfied." (R. 25). During the hearing, the ALJ asked the VE, outside of the two hypotheticals posed, what an employer's tolerance is for time off task and absenteeism. (R. 95). The VE noted that a person can be off task 10% of the workday outside of regular breaks and can be absent one day per month. *Id.* The ALJ's decision is silent on this testimony and fails to explain how this employability requirement is factored into Ms. Robbins' assigned RFC, particularly how it coincides with her moderate limitation in the ability "to perform at a consistence pace without an unreasonable number and length of rest periods." (R. 113, 127). Ms. Robbins' attorney asked the VE "[i]f someone has no useful ability to . . . maintain attention and concentration are they able to work" to which she responded, "no." (R. 96). The attorney further asked the VE if a person could remain employed if they respond to a supervisor with anger. (R. 99). The VE testified that it is not acceptable and generally, after one warning, the person would be terminated. (R. 99). However, it appears the ALJ did not consider this testimony provided by the VE nor did he explain why this testimony was not incorporated into his decision. The ALJ provides no explanation as to why Ms. Robbins is capable of working a job that would require end of day goals. As Ms. Robbins' argues, the RFC's requirement that she meet end of day requirements creates a situation where should Ms. Robbins be off task for

more than allowed 10% of her day, she would be required to exceed the goal quota due to that off task time. (R. 95). The ALJ does not provide a logical bridge between the State agency psychological consultants' findings and his conclusion that Ms. Robbins should be free of production rate pace or quotas but should rely on end of day goals being satisfied. Because the ALJ did not adequately include Ms. Robbins' difficulties with concentration, persistence, and pace in the RFC, the decision cannot stand.

In his opinion, the ALJ reasoned that he "accounted for the claimant's mental impairments by placing various mental limits" in the RFC, then only lists "including no more than minimal math skills" as an example. (R. 28). However, the ALJ fails to explain the portion of the RFC that states "limited to simple, repetitive and routine tasks . . . ; free of production rate pace and free of quotas but should rely more on end of day goals being satisfied." (R. 25). Perhaps the ALJ may have thought that with this portion of the RFC he was addressing Ms. Robbins' difficulties with math and managing herself, as the Commissioner argues, however, the ALJ's vague explanation does not provide this Court enough of a logical bridge to afford Ms. Robbins a meaningful review. *Giles*, 483 F.3d at 487. The "no more than minimal math" limitation in the RFC cannot account all of Ms. Robbins' mental impairments. This limitation could have been just as likely included to account for Ms. Robbins' moderate limitation in remembering or applying information or simply her documented difficulties with math. But the ALJ provided no explanation or clarification regarding which mental impairment was being accounted for by which mental limit. *Muzzey v. Berryhill*, No. 3:17-CV-796 JD, 2019 WL 697137, at *3 (N.D. Ind. Feb. 20, 2019) (holding the court cannot confidently conclude the claimant's mental functioning limitation was properly incorporated into any of the hypothetical questions or into the RFC).

The ALJ further reasoned that since Ms. Robbins' employer had no problems with her and she was able to do many daily living activities independently, the assigned RFC was supported. (R. 29-30). However, Ms. Robbins' previous part-time job only required at most two hours a day, far less than the average workday. Although her employer reported no complaints, Ms. Robbins testified to getting in trouble for not always following the rules at her job. (R. 75). She also stated that trying to learn all the rules at her job was stressful for her. (R. 76). Ms. Robbins' mother testified that she has trouble taking supervisory orders. (R. 83). The ALJ does not reference this record evidence in his decision.

Additionally, her mother testified that she does not believe Ms. Robbins could handle daily activities without living with her. (R. 86). While a claimant's activities of daily living are an appropriate factor for an ALJ to consider, the Seventh Circuit has "repeatedly cautioned that a person's ability to perform daily activities . . . does not necessarily translate into an ability to work full time." *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) (noting that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full time); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) (reasoning that the pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work). Thus, when an ALJ considers a claimant's activities, the ALJ should consider not only what the claimant does, but also how the claimant goes about performing those activities and what effect the activities have on the claimant. *Craft*, 539 F.3d at 680. While Ms. Robbins is able to tend to her own personal hygiene and reheat meals in the microwave, her mother testified that she has problems filling out applications or paperwork, she cannot manage money, she cannot prepare a meal, she often

14

deviates from grocery lists, and she is a careless driver. (R. 81, 85-88). Her mother noted that Ms. Robbins does not handle changes in routine or stress well. (R. 321). Ms. Robbins testified that when she goes to the grocery store, her mother is the one who creates the list, and when she goes to the store on her own, she often needs to call her mother. (R. 69). The ALJ failed to create the logical bridge of how this testimony supports her ability to maintain full-time employment, especially when Ms. Robbins has not worked full-time all her adult life. (R. 208-214).

On remand, the ALJ shall explain how his RFC determination and hypothetical question to the VE accommodate Ms. Robbins' moderate limitations in concentration, persistence, or pace. (R. 1231; 1458). The parties may also address Ms. Robbins' remaining arguments, including whether the jobs the VE testified to be available to a person under the hypothetical are in fact jobs that a person with the listed limitations in the RFC is actually capable of performing.

## V. CONCLUSION

For those reasons, the Court REVERSES the Commissioner's decision and REMANDS for additional proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: February 18, 2020

/s/ JON E. DEGUILIO

Judge

United States District Court